Good morning. I'm Jerry Watley and I represent Mr. Ansaldo. Mr. Ansaldo, after his conviction, was first at Corcoran State Prison for approximately two years and then after that was transferred to Mule Creek State Prison. He delayed some number of years before he filed his first state habeas in 2002. And in his defeating to justify the delay, he basically alleged two reasons. He said, while at Corcoran, it's such a mean place for child offenders, child molesters, that I was afraid to even let anyone know that I was there for that kind of a crime. I was afraid to even look at my records. And my counselor said, all we can do for you is burn your record or shred it, but it's best that you just keep that quiet. He thought, apparently, Mr. Ansaldo did, that that was pleading a justification for delay while at Corcoran. He then got transferred to Mule Creek State Prison, I think it's called a sensitive needs program, apparently a much more humane situation for inmates, especially child molester convicted people. And there he began to try to read the record and the various law books to prepare his state habeas attacks. So what day was he transferred to the sensitive needs? I think he was transferred in December 2000. Right now, but he also, so that's when he started working on his habeas, correct? Yes, apparently within a few weeks after that, he began to work, as I understand, by January 2001. Right. One of the things, though, he claims is he has a visual impairment and that that was part of the reason that he couldn't get it done, right? Yes. But what I'm curious on that one, how can he claim that if he doesn't, you know, how can the visual impairment have been a problem when he, he was already late by the time he started? I'm sure that the court was going to ask me that. I think this is the answer. Okay. He said in his petitions, in his petition and also in his objections, in the colloquy that he had with the district court, he said, I've had this vision impairment all my life. I was treated for it before I ever was incarcerated. So in other words, whatever impairment he had, he had while he was a corkman. He also was painfully aware that there was no reason to try to read anything in a corkman because he felt that would cause his premature injury or death even. Therefore, Mr. Mr. Ansaldo, not a lawyer, a pro per asking this court to liberally construed his petitions, felt that to justify this delay, I will focus on the fear of my personal safety while a corkman. And then when I get to Mule Creek, I will demonstrate that even then when I was able to pull my record out and begin to prepare for post-conviction relief or intensive relief, I found that I, you know, as I, that I could not do it in a timely fashion in a way. That it took me time, more time to do it, that I was impeded, as he said, in the preparation of the petitions even after I arrived at Mule Creek where I could look at my papers. He forgot to say, because he wasn't a trained lawyer, he forgot to say, and even if I could have looked at my papers at Corcoran, I could not have done it in a timely fashion because of this vision impairment, which I've had for years before I was ever incarcerated. Well, now what's your certificate of appealability limited to, though? It refers to whether or not the district court should have afforded Mr. Ansaldo an evidentiary hearing on the issue of whether his medical condition impaired his ability to timely file. So that seems that that is the visual. I'm sorry. That seems like that would be the visual issue. Yes, yes, yes. All right. So then how do we get into the, you know, how do you expand it to the extraordinary circumstance? Well, I believe that the Attorney General's position is that we don't have to, that this court need not even address whether or not an evidentiary hearing should be afforded on the issue of the visual impairment because he never alleged, he, within the statutory period, was at Corcoran. Instead, he focused on his fear of personal safety while he was at Corcoran. But he never said, as the Attorney General claims or argues, I shouldn't say claims, argues, he never said that the sole reason that I did not timely file while at Corcoran was the personal safety fear. He never said that. He said, granted, he said, I did not file at Corcoran because I was afraid to look at my papers. But if you take it all together, he's saying that before I went to Corcoran, I had a vision impairment. While I was at Corcoran, I had a vision impairment. And after I got out of Corcoran and got to Mule Creek, I still had the vision impairment. Now, Judge Stotler said, in effect, that your guy may have a vision impairment, but he never connected the vision impairment with his inability to file on time. What's the answer to that? I'm not sure I quite understand your question. There are a lot of people who have vision impairments. Yes, sir. I have one. Right. It didn't stop you from being here today. Almost. Judge Stotler says, OK, he may have had a vision impairment, but he never established that his vision impairment prohibited him from filing his petition on time. Well, he did allege, in his various pleadings, he said at one point, he said, Petitioner's, quote, Petitioner's visual handicap did impede his ability to file his petition to rid of Fabius Corpus in a timely manner. And that appears on page. OK. That's a conclusion. In what way did it keep him from filing on time? Granted, it is a conclusion, and that's why I'm saying that this Court should not order the writ to issue, but this Court should remand the district court and order an evidentiary hearing to be afforded to flesh out this allegation, which should be viewed basically as an affidavit. But don't you have to make some sort of showing that something would come out of the evidentiary hearing? I mean, obviously, the visual impairment has to be the but-for if you're going to be successful. I'm just saying, if he had just put down, well, I wear glasses, does that entitle him to a hearing? Well, perhaps that wouldn't, but Mr. Ansaldo went much further than that, I believe. Well, not a lot. Well, I think he went a bit further than that, Your Honor. Especially since he doesn't even start until after, I think what everyone, the deadline was March 20th, 1999, right? Yes. So he doesn't even start until, what, December of 2000? That's true. But because of all that time, he was at Corcoran State Prison where he says that he was afraid to even look at his papers, and then before he filed, when he started looking at the papers, the vision impairment prevented him from doing it in a timely fashion. I think what, I think it can be fairly construed that what he said in total is that during this entire period of incarceration, he had a vision impairment, which impeded his ability to timely file. And that's what an evidentiary hearing should be afforded to resolve, whether that's true or not. And he did allege that. And if you give that credence as an affidavit, the district court should have, I believe, afforded an evidentiary hearing before it actually denied it. I think perhaps it's somewhat significant here that this Court ordered the, or issued a certificate of appealability based upon the case of Laws v. La Marquette, which came out approximately a month and a half. It came out December 5, 2003, and the magistrate issued his first report in October 28, 2003. Give it Laws. He says that the guy in Laws says he was mentally incompetent during that period. I mean, it's a specific, it's a specific allegation. I grant the Court that Mr. Ansaldo could have been more specific about saying, in addition to the time I was being afraid for my personal safety at Corcoran, I also had a vision impairment, so even if I did look, I would have been impeded. He didn't say that expressly, but I think it's fairly construed as implied within the total circumstances that was the situation. Did you want to reserve? Excuse me. You can finish your sentence, but you're running out of time. Did you want to reserve any time for rebuttal? You don't have to if you don't want to. I think I'll just prepare to submit unless there's questions. Okay. If there's nothing else. Thank you, Mr. Watley. Good morning. Good morning, Your Honor. My name is Michael Murphy, Deputy Attorney General on behalf of the Warden, Mr. Knowles. The issue that was granted on this appeal was whether or not he was entitled to further factual development or an evidentiary hearing on his eye condition. And on that specific point, the answer should be no because the record is already abundantly clear that that was not the cause in fact of his untimeliness. From the period of 1998 to 1999 when the Federal statute of limitations was running, he makes very clear and is consistent throughout his State and Federal filings that the reason he didn't file any legal papers was because he, quote, did not dare to read his transcripts while in prison. And until actually January of 2001 is when he began, he claims, to prepare his legal pleadings and then his eye condition became a factor. But prior to that time and during the relevant time period, his eye condition or any other medical condition wasn't in fact the cause of his untimeliness, which is absolutely a requirement for equitable tolling. And I think the distinction in Laws v. Lamarck was in that case the allegation of mental incompetency, even though that hadn't been shown to in fact cause the delay for him, he did make an allegation that it was a condition that prevented him from working on his case during the relevant time frame. And so they wanted further development of whether and to what degree his condition was a factor for his untimeliness. Whereas in this case, the eye condition simply is not a factor at all, according to Mr. Ansolvo himself. Well, from your perspective, how are we supposed to look at this? You know, let's child molesters, I think, you know, people that have been involved in the courts at all know that, you know, a lot of times they're people that get put in protective custody or admin, you know, at SAG or something along those lines. You know, what do we do with his argument that, well, you know, I couldn't do anything while I was in a general prison population where, you know, I didn't basically want anyone to know what I was charged with and I was at risk and all of that. What are we supposed to do with that? How does that factor in? I don't believe this Court is supposed to do anything with that in this appeal. That wasn't the issue that was granted. Also, if that is to be considered as part of a general claim for equitable tolling, I think that would stretch the limits of an exceptional circumstance or wrongful conduct to a degree that wouldn't be appropriate. If there's not some inherent exceptional circumstance, for example, a medical condition, a mental incompetency problem, then you need wrongful conduct from the State. And in this case, it's clear from his pleadings he had library access. He had his transcripts in his cell. The fact that Mr. Ansaldo himself chose not to work on his case because of his concerns and fears whether legitimate or not for his particular circumstance, that would open the floodgates to claims that people, I mean, whether you're a child molester or not, someone could say I was a particular race and I was afraid to look at transcripts given my cellmate or something of that nature. And that doesn't become anything extraordinary at that point. It becomes a problem inherent in a prison population, for sure, and given different crimes. But I don't think it rises to the level of an exceptional circumstance to toll a one-year limitations period. I would also argue that the limitations period of one year builds in an entire year for various circumstances to incur that might delay or hamper or impede filing federal petitions, whether it be you only have a limited ability to read for whatever reason in a library, so it takes you longer. But I think Congress has made the decision that one year is a reasonable time to cover most ordinary circumstances. And they also recognize that inmates are, for various reasons, simply not going to make it, but we have to have efficiency and you have to have reliability, if you will, in the timelines and let judgments be final after a period of time. And this appropriately establishes that. Unless there are any questions, I'm prepared to submit. Roberts. Thank you very much, Mr. Murphy. Thank you. Mr. Wadley, you have about a minute left. Let me get the last word. That's all I need. As I understand it, the district court and this court should have liberally construed the allegations of the petition as well as the other documents filed in opposition and objection. And if it is liberally construed, he said I had a vision impairment that was in existence before I was incarcerated, before I was ever in Corcoran State Prison, which I still had in Mule Creek State Prison, and that that vision impairment impeded my ability to timely file. I think he meant his burden of raising enough for an evidentiary hearing, not enough to issue the writ, and asking this Court to direct the evidentiary hearing be afforded to see if, in fact, that is the factual case. He never said in any of his papers that the sole reason I did not file while at Corcoran State Prison was because of the fear for my personal safety. He never said that. Thank you, Mr. Wadley. Mr. Murphy, thank you as well. The case has started. It is submitted at this time. Thank you.
judges: Silverman, Callahan, Duffy